

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00361-CV

IN THE INTEREST OF J.J., A CHILD

On Appeal from the 316th District Court of
Hutchison County, Texas
Trial Court No. 43852, Honorable James Mosely, Presiding

April 30, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

A.L, the mother of J.J., appeals an order terminating her parental rights with her child. Two issues pend for review. Through the first, she contends that the trial court was obligated to dismiss the suit. Her second issue concerns whether the evidence was legally and factually sufficient to support the trial court's finding that termination was in the child's best interest. We affirm.

### Dismissal

A.L. believes that the trial court lost jurisdiction when it ordered the monitored return of the child to her but failed to expressly retain the cause on its docket and schedule a new dismissal date per § 263.403(b)(2) of the Texas Family Code. Consequently, the

original dismissal date, as calculated under § 263.401 of the same Code, allegedly remained effective and lapsed without the court commencing trial or otherwise extending the dismissal date. We overrule the issue.

The following is undisputed: 1) the original dismissal date, for purposes of § 263.401 of the Family Code, was April 20, 2020; 2) the trial court ordered the monitored return of J.J. to A.L. on February 11, 2020; 3) though the February 11th order expressly said nothing of a new dismissal date, the trial court did schedule a "final hearing . . . for **April 21, 2020"**; 4) the February order also stated that "placing [J.J.] in the home of [A.L.] while retaining jurisdiction is in the best interest of the child"; 5) the trial court signed a written order ending the monitored return of J.J. on April 29, 2020; 6) a new dismissal date of October 17, 2020 was designated in the April 29th order; 7) October 17, 2020, fell within 180 days of April 29th; and 8) the final hearing commenced on October 5, 2020. This information provides the factual framework within which we address A.L.'s issue.

As we know, a trial court must dismiss the Department's suit to terminate if the trial court does not "commence trial" or retain the cause per § 263.401(b) of the Family Code by the Monday following the first anniversary date of the Department's appointment as temporary managing conservator of the child. TEX. FAM. CODE ANN. § 263.401(a), (b) (West Supp. 2020). During that interim, the trial court may opt to return the child to the parent under monitored supervision. Such discretion arises from statute, which statute provides:

> a) Notwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order as required by that section if the court renders a temporary order that:

> > (1)  finds that retaining jurisdiction under this section is in the best interest of the child;
>
> > (2)  orders the department to:
>
> > > (A)  return the child to the child's parent;
>
> > > \* \* \* \* \*
>
> > (3)  orders the department to continue to serve as temporary managing conservator of the child; and
>
> > (4)  orders the department to monitor the child's placement to ensure that the child is in a safe environment.

*Id.* § 263.403(a)(1)–(4) (West 2019).  If the court so opts to place the child on monitored return, then it also "shall (1) include in the order specific findings regarding the grounds for the order; and (2)  schedule a new date, not later than the 180th day after the date the temporary order is rendered, for dismissal of the suit unless a trial on the merits has commenced."  *Id.* § 263.403(b)(1), (2).  If monitored supervision proves inappropriate, the child may again be removed from the home.  If the Department so "move[s]" the child, the court becomes obligated to "schedule a new date for dismissal of the suit."  *Id.* § 263.403(c).  The new date "may not be later than the original dismissal date established under Section 263.401 or the 180th day after the date the child is moved [from monitored return] . . . whichever date is later."  *Id.*

As previously mentioned, the trial court ordered the monitored return of J.J. on February 11, 2020.  Its order specified that "placing [J.J.] in the home of [A.L.] ***while retaining jurisdiction*** [was] in the best interest of the child."  (Emphasis added).  Though the order contained a category labeled "Dismissal Date and Hearing Dates," only a final hearing date appeared under it.  That date was April 21, 2020.  Nothing was said of a

3

new dismissal date there or elsewhere in the decree. Admittedly, statute obligated the court to set one. Equally apparent is the legislature's failure to provide a consequence for a court neglecting the task. When faced with such a situation, sister courts have hesitated to read consequences into the statute. For instance, the appellate court in *In re D.O.A.I.*, No. 11-16-00141-CV, 2016 Tex. App. LEXIS 12655 (Tex. App.—Eastland Nov. 30, 2016, no pet.) (mem. op.), refused to hold that the trial court should have dismissed the proceeding because it failed to set a new dismissal date when the child was removed from monitored supervision. In so holding, it noted, among other things, that "[n]othing in Section 263.403 indicate[d] that dismissal is an appropriate remedy for the trial court's failure to schedule a new dismissal date 'at the time' of removal from a monitored return as required by Section 263.403(c)." *Id.* at *4. The same was said in *L.H. v. Tex. Dep't of Family & Protective Servs.*, No. 03-15-00673-CV, 2016 Tex. App. LEXIS 1838 (Tex. App.—Austin Feb. 24, 2016, no pet.) (mem. op.), when the trial court also did not set a new dismissal date after removing the child from monitored return. *Id.* at *10. Instead, the reviewing court perused the circumstances and concluded that they revealed that the original dismissal date was no longer operative. *Id.* at *9. The circumstances included 1) the trial court's extending the original dismissal date to July 20th via the order placing the child in monitored supervision and 2) ultimately setting the final hearing for September 8th once the child was removed from monitored supervision.

Neither *L.H.* nor *D.O.A.I.* are directly on point with the situation before us. They concerned noncompliance with § 263.403(c), while we deal with § 263.403(b). Nonetheless, both statutes require the designation of a new dismissal date, and neither provide consequences for noncompliance. So, we find *L.H.* and *D.O.A.I.* analogous to

4

our situation and insightful. Creating a consequence, like dismissal, when statute provides none is tantamount to donning legislative garb. That is not our function. Indeed, the legislature knows how to create a consequence for inaction, as depicted by the "automatic dismissal" provided in § 263.401. Yet, it did not do so when considering default related to § 263.403(b) and (c). And, we eschew rewriting the latter provision to include consequences omitted by the legislature, just as did the courts in *L.H.* and *D.O.A.I.*

Moreover, and akin to *L.H.*, we have before us indicia that the trial court implicitly retained jurisdiction and extended the dismissal date when placing J.J. in monitored return. First, it determined that "placing [J.J.] in the home of [A.L.] ***while retaining jurisdiction*** [was] in the best interest of the child." (Emphasis added**).** Without retaining jurisdiction over the cause, the court could hardly have found that retaining jurisdiction when coupled with the placement was in the child's best interests. Second, the court also set a date for final hearing in its February 11th order. That date was April 21st or one day after the original dismissal date. This, at the very least, denotes the trial court's intent to forgo the original dismissal date and undertake the very thing expressly permitted by § 263.403(a) (i.e., "retain jurisdiction and not dismiss the suit"). *Burns v. Stettner Clinic, Inc.*, No. 07-00-0452-CV, 2000 Tex. App. LEXIS 7947, at *4 (Tex. App.—Amarillo Nov. 27, 2000, no pet.) (not designated for publication) (construing a judgment and stating that "the *intent* of the trial court as expressed in the order or judgment is determinative"). Given the statutory language specifying that jurisdiction may be retained and dismissal forgone, "notwithstanding section 263.401," when a child is placed in monitored return, given the factual circumstances we alluded to above, and given the absence of legislatively mandated consequences for the failure to specify a new dismissal date, we

5

conclude that the trial court did not lose jurisdiction over the cause through noncompliance with § 263.403(b).

### *Sufficiency of the Evidence*

The second and last issue we address is A.L.'s contention that the evidence was legally and factually insufficient to establish that termination was in the child's best interests. The applicable standard of review is that explained in *In re D.R.C.*, No. 07-19-00428-CV, 2020 Tex. App. LEXIS 2524 (Tex. App.—Amarillo Mar. 25, 2020, pet. denied) (mem. op.). Furthermore, the factors mentioned in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976), are considered in conjunction with the standard of review in cases like that before us. Applying the standard in conjunction with the *Holley* factors leads us to overrule the issue.

We first note that the trial court found two statutory grounds upon which to terminate A.L.'s parental rights. One involved her knowingly placing or knowingly allowing the child to remain in conditions or surroundings endangering the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2020). The other involved her failure to comply with the provisions of a court order establishing the actions necessary for the mother to obtain the return of the child. *Id.* § 161.001(b)(1)(O). No one questions, on appeal, the validity of those findings. Moreover, the evidence underlying them is relevant to a best interest analysis.

The evidence underlying the trial court's statutory findings depicts that A.L. consumed marijuana while caring for J.J. and engaged in family violence with the child's father. Though the latter diminished once father left the residence, the former did not. Her subsequent drug tests resulted in positive findings for both marijuana and cocaine.

6

Other evidence revealed not only that she abused alcohol as well but also that stopping such abuse proved more difficult to her than ending her abuse of controlled substances. And, though A.L. completed mandated courses regarding violence and substance/alcohol abuse, she again engaged in conduct that those courses were intended to address.

Next, A.L. and J.J. resided with relatives until his removal. The child, who was born in July of 2018, was then placed with another relative, L.P. Though the trial court eventually ordered the monitored return of J.J. to A.L., the latter returned the child to L.P.'s care because she could not provide for the child. That resulted in the trial court vacating its order for monitored return. J.J., then, was allowed to remain with L.P., in whose care the child remained. L.P. also provided the care for J.J.'s younger sibling after that infant's removal from A.L. due to her continuing drug abuse and "inappropriate housing."

Prior to the final hearing, A.L. lost her job at a local fast-food business and her living arrangement with relatives. Furthermore, the caseworker did not know if A.L. had another job or alternate housing since A.L. failed to remain in contact with the caseworker.

As for A.L.'s relationship with J.J., she not only failed to maintain regular visitation with the child but also relinquished his care to a relative after being afforded opportunity to resume it. That J.J. could not depend on his biological father caring for him was depicted by the evidence of the individual's incarceration at the time of trial.

As previously mentioned, L.P. provided J.J.'s care prior to and at the time of trial. Evidence revealed that he had done well under it. He had bonded with L.P., who paid much attention to him. Though the youth experienced speech developmental issues, he was receiving services for it while in L.P.'s care, too. Additionally, living with L.P. afforded J.J. the opportunity to remain with his younger sibling. Finally, allowing J.J. to stay with

7

L.P. was in the child's best interests because L.P. could continue caring for him, according to one caseworker.

The foregoing evidence satisfies both aspects of the standard of review. It proves the evidence to be both legally and factually sufficient to support the finding that J.J.'s best interests were furthered through termination of the parental relationship.

Accordingly, we affirm the trial court's order terminating A.L.'s parental rights.


Brian Quinn
Chief Justice